IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAULA J. SHAW, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:12-0247 |
| ) | Chief Judge Haynes |
| v. ) | |
| ) | |
| TENNESSEE DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Plaintiff, Paula J. Shaw, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. § 2601, and The Rehabilitation Act, 29 U.S.C. § 701 et seq. against the Defendant, the State of Tennessee Department of Transportation ("TDOT"), her former employer. Plaintiff asserts claims for retaliation and discrimination. Plaintiff alleges, in essence, that she was demoted and terminated for reporting race and gender discrimination and for exercising her FMLA rights. (Docket Entry No. 1).

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 19), contending, in sum: (1) that Plaintiff's retaliation claim fails because Plaintiff was terminated for a legitimate, non-discriminatory reason, (2) that Plaintiff cannot establish a causal connection between the exercise of her protected activity and her demotion and dismissal, (3) that Plaintiff's disability claim fails because she cannot prove discrimination based on her disability. In response, Plaintiff asserts that she has submitted sufficient evidence to establish a *prima facie* action of

1

retaliation, and that a reasonable jury could find Defendant's stated reason for Plaintiff's dismissal as pretext for retaliation. (Docket Entry No. 29).

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted because Plaintiff lacks proof that the Defendants' stated and legitimate reasons for her termination were pretextual for retaliation or discrimination based upon her cited disability.

## FINDINGS OF FACT[1]

Plaintiff began her employment with the State of Tennessee on November 1, 1989. (Docket Entry No. 33, ¶ 1). Plaintiff served as a career service employee until June 2006, when she was promoted to an executive service position with TDOT. Id. at ¶ 2. As an executive service employee, Plaintiff served at the will of the appointing authority. Id. at ¶ 4. Plaintiff served in the latter position from June 16, 2006 through March 8, 2011 and was the Acting Director of the Division of Multimodal Transportation Resources ("Multimodal") from June 1, 2007 to November 4, 2010. (Docket Entry No. 30, ¶ 1-2). As the Director of Multimodal, Plaintiff supervised approximately 23 employees, and was either directly or indirectly responsible for the management of a number of transportation programs, some of which receive funding from the Federal Transit Administration. Id. at ¶ 3-4.

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because Plaintiff did not file a response to Defendant's Statement of Undisputed Facts (Docket Entry No. 13) in accordance with Local Rule 56.01(c), Defendant's proffered statements of facts are undisputed for purposes of summary judgment, pursuant to Local Rule 56.01(g).

On June 30, 2010, Bennie Nicholson, a TDOT employee under Plaintiff's supervision, complained to the TDOT Civil Rights Office that Plaintiff, among others, had discriminated against him because of his race. Id. at ¶ 5. TDOT investigated this complaint, interviewed Nicholson and Plaintiff as part of its investigation. Id. at ¶ 6. On July 16, 2010, Plaintiff emailed Cammie Davenport-Woodle, Director of the TDOT's Civil Rights Office, and Delaine Linville, the Directors of TDOT's Human Resources, with information about Nicholson's work habits as well as his inappropriate comments to Plaintiff. Id. at ¶ 7.

Sometime before August 11, 2010, Plaintiff met with Joe Carpenter, her direct supervisor, who informed her that he would be making changes in the management of Plaintiff's division, including his closer supervision of Plaintiff's division. Id. at ¶ 9. Plaintiff deemed Carpenter's heightened supervision detrimental to her career, and on August 11, 2010, Plaintiff emailed TDOT Human Resources Director Linville requesting reassignment from her position as Director of Multimodal. Id. at ¶ 10-11.

On August 13, 2010, Plaintiff inquired about the status of her July 16, 2010 email about Nicholson. Id. at ¶ 12. Davenport-Woodle, TDOT's Civil Rights Director, offered to arrange a meeting with Plaintiff to address her concerns, but Plaintiff considered a meeting unnecessary. Id. On or about November 2, 2010, TDOT's Civil Rights Office's investigation found Nicholson's complaint of discrimination against Plaintiff to be meritless. Id. at ¶ 13.

On November 3, 2010, Carpenter received a routine internal audit's preliminary findings of reckless mismanagement of TDOT's Multimodal. Id. at ¶ 14. On November 4, 2010, Plaintiff was demoted to the position with TDOT's Bureau of Environment and Planning. Id. at ¶ 15. This demotion removed all of Plaintiff's managerial and program supervision responsibilities. Id. at ¶ 18.

On December 2010, Plaintiff began to experience health problems and from January 26, 2011 through March 8, 2011, Plaintiff was absent from work on FMLA leave. Id. at ¶ 20, 22.

On January 7, 2011, Carpenter received the final internal audit report on Multimodal's management. Id. at ¶ 21. On February 17, 2011, Carpenter received preliminary results from an external audit of Multimodal from the Tennessee Comptroller's office, that confirmed earlier findings of mismanagement within Multimodal and noncompliance with federal law. Id. at ¶ 23-24. Specifically, the Comptroller's audit found, in sum, that Multimodal: (1) did not prepare mandatory risk assessment forms for projects funded with federal grants; (2) paid subrecipients $79,020.93 for reimbursement requests that were not supported properly and included impermissible goods and services under federal guidelines; (3) overbilled of the Federal Transit Administration ("FTA") for $23,510.86; (4) did not adequately track vehicle inventories and lacked an annual vehicle inspection, as required by the FTA; (5) failed to draw promptly on funds from the FTA, resulting in "inefficient use of state money;" (6) created a risk of "federal sanctions, federal withholding, or other penalties;" (7) incorrectly designated subrecipients as "medium risk" when federal regulation rates such recipients as "high risk;" (8) paid $50,000 to a grant subrecipient as reimbursement for vehicle purchases without proof that vehicles had been purchased; (9) failed to institute controls to ensure that bus fares were deducted from reimbursement requests as required by law, resulting in $239,043.34 overpayment to subrecipients. Id. at ¶ 25.

Carpenter recommended Plaintiff's dismissal from TDOT, effective March 8, 2011. Id. at ¶ 27. On March 10, 2011, Linville, TDOT's Human Resources Director, issued a Tennessee Department of Labor separation notice to Plaintiff with the stated reason of separation, "Expiration of Executive Service Appointment." (Docket Entry No. 33 at ¶ 12). According to the Tennessee

Department of Personnel Rules, "In the executive service, a regular appointment is expected to continue at the pleasure of the appointing authority." Id. at ¶ 17.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [she] had to come forward with all of [her] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874

F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). Moreover, the Court of Appeals Explained that:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations ommitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence

7

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . ..'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court

requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Plaintiff's first claim is for Defendant's retaliation for her exercising her rights to protest a discriminatory employment practice and for requesting her FMLA leave that led to her demotion. (Docket Entry No. 1 at 5-6). Plaintiff can prove this claim with direct or indirect evidence of the retaliatory action(s). 42 U.S.C. § 2000e-3(a). Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc). Absent direct evidence of discrimination, Plaintiff's retaliation is evaluated under the McDonnell Douglas three-part, burden-shifting analysis: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) the employer must articulate some legitimate,

nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); accord Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kent County Sherriff's Ass'n v. Kent County, 826 F.2d 1485, 1492 (6th Cir. 1987) (citing McDonnell Douglas and Burdine). The burden of persuasion remains with the plaintiff at all times. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990).

As Plaintiff lacks direct evidence of retaliation, Plaintiff's proof must be evaluated under the McDonnell Douglas burden-shifting framework and at issue is the third element, the requisite adverse employment action that must be sufficiently severe to "dissuade a reasonable worker from making or supporting a complaint or charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). "To establish the causal connection...a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen, 229 F.3d at 563. Temporal proximity alone is generally insufficient to establish a causal connection. Id. at 566-67.

Here, Plaintiff fails to present any evidence of a causal connection between the protected activity she engaged in, namely, her complaint of discrimination by Nicolson and her FMLA leave, and her demotion and subsequent dismissal from employment with TDOT. Assuming Plaintiff could prove a causal connection, the burden would shift to Defendant to establish a legitimate, non-discriminatory rationale for its employment action. McDonnell Douglas, 411 U.S. at 802. Defendant's proof is mismanagement within the Multimodal Division under Plaintiff's leadership and tenure with substantial costs to the State and potential loss of federal funds. This proof shifts the burden to Plaintiff to demonstrate that the Defendant's stated reasons are pretextual for retaliation.

Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009).

A plaintiff may prove pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, (3) that they were insufficient to motivate the employer's action." Id. Plaintiff's only proof of Defendant's motivation in letting her term of service expire is that the Defendant failed to explain to Plaintiff that her mismanagement of Multimodal was the cause in fact of her dismissal.

The Court concludes that lack of explanation for Plaintiff's dismissal does not prove a causal link between Plaintiff's termination and Title VII discrimination complaint nor her FMLA leave. Moreover, Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination is not challenged. Thus, the Court concludes that Plaintiff's retaliation claim fails.

As to Plaintiff's FMLA and Rehabilitation Act claim, the "Act prohibits discrimination against an otherwise qualified handicapped individual, solely by reason of his handicap." Pesterfield v. Tenn.Valley Auth., 941 F.2d 437, 441 (6th Cir. 1991) (citing 29 U.S.C. § 794 and Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 626 (1984)). Claims under the ADA and Rehabilitation Act are analyzed under the same standards. Thompson v. Williamson County, Tenn., 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing Maddox v. University of Tenn., 62 F.3d 843, 846 n. 2 (6th Cir. 1995). "By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (citation omitted).

"To make out a *prima facie* employment discrimination case under either Act, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was

discriminated against solely because of the disability." Id. (citations omitted). "To be 'disabled' for the ADA and the Rehabilitation Act, an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." Id. citing 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2).

Plaintiff's alleged disability is her "severe depression and anxiety that necessitated psychotherapy and treatment." (Docket Entry No. 1, ¶ 12). Plaintiff contends that this depression and anxiety 'substantially limit[ed]' her in at least one 'major life activity,' namely, her ability to work, and that Defendant had a record of this impairment through Plaintiff's FMLA leave request. Mahon, 295 F.3d at 589. Construing all facts in the light most favorable to the Plaintiff, the Court concludes that Plaintiff's depression qualifies as disability under the FMLA and Rehabilitation Act. Yet, Plaintiff lacks proof that she was "discriminated against solely because of the disability." Id. Defendant's non-discriminatory reason for Plaintiff's demotion and the expiration of her executive service is the mismanagement of the Multimodal department under her leadership. Plaintiff lacks proof that this reason is pretext for disability discrimination. Thus, the Court concludes Plaintiff's disability claim fails.

For these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 19) should be granted.

An appropriate Order is filed herewith.

ENTERED this the ___ day of May, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAULA J. SHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-0247 |
| ) | Chief Judge Haynes |
| ) | |
| TENNESSEE DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER

In accordance with the Memorandum filed herewith, the Defendant's motion for summary judgment (Docket Entry No. 19) is **GRANTED**. Plaintiff's motion for partial summary judgment (Docket Entry No. 25) is **DENIED**. This action is **DISMISSED with prejudice.**

This is the Final Order in this action.

It is so **ORDERED**.

ENTERED this the ___ day of May, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court